# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BARRIE TOOTILL,                    :
          Plaintiff,         :
                            :
v.                            :          3:08-cv-1096 (CFD)
                            :
SECURITAS SECURITY SERVICES USA INC.,  :
          Defendant.      :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Barrie Tootill, brought this action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. against the defendant, Securitas Security Services USA Inc. ("Securitas").[1] Securitas moves for summary judgment on the ground that it did not engage in any discriminatory conduct. For the reasons that follow, the defendant's motion is granted.

## I.    Factual Background[2]

Tootill was born on January 4, 1946. He was employed by Securitas as a security officer and was responsible for managing and supervising the security operation at the buildings of the Hartford Financial Services Group ("Hartford Financial").[3] A site supervisor—such as Tootill—must assist in submitting payroll and personnel information and must ensure adequate

_____

[1] The case caption erroneously has Securitas listed as "Secyritas." The Clerk is ordered to amend the caption and party name to read "Securitas Security Services USA Inc."

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[3] Specifically, Tootill was responsible for the Great Pond, Trumbull Services, Waterside 3, and Bloomfield Print Shop facilities.

coverage of all posts and positions.  Prior to being employed with Securitas, Tootill was employed by Cognisa, another security services provider for Hartford Financial, for approximately three years.  When Securitas took over the security for Hartford Financial in 2004, it retained Tootill in his position.

During his tenure with Securitas, Tootill took a leave of absence to attend to family matters.  Tootill was temporarily replaced by Lieutenant Eric Ziegler during his absence, an individual who, at that time, was approximately 35 years old.  Securitas claims that while filling in for Tootill, Ziegler found evidence of time-keeping improprieties and client billing errors. Although Tootill denies any "improprieties," it is undisputed that Ziegler reported his findings to the Senior Branch Manager for Securitas, David Harris.  Harris then informed the Area Vice President for Securitas, Justin Engelmann, and the Director of Security for Hartford Financial, Richard Sealander, of his suspicions.  Engelmann subsequently retained the investigative services of Brian Hankard, the Supervisor of Investigations for Pinkerton Consulting & Investigations, to look into the matter.[4]

Hankard's investigation determined that certain Hartford Financial sites under Tootill's supervision were not adequately staffed.  Additionally, Hankard's investigation found payroll discrepancies, namely that Securitas employees were not being paid for the times they actually worked, and that some of the employees were paid for days not actually worked and for posts where they apparently were not located.  Moreover, the investigation revealed various instances where officers were signed in at one location, but were showing key card access at various other

---

[4] Pinkerton Consulting & Investigations ("Pinkerton") performs internal security reviews and fraud investigations such as the one in this case.  Pinkerton is an "independent subsidiary" of Securitas.

locations.

In response, Tootill maintained that security officers were having difficulty receiving payments on time and, although he addressed the issue with payroll employee Deb Cannon, the problems were never fixed. As a result, Tootill claims he began working overtime, but crediting the time he worked to other employees. During an interview with Hankard, Tootill admitted that he would work a post, but credit a security officer for that time. He stated that he would put the time that he worked on his coworkers' time sheets, either by adding the time or modifying their hours with "whiteout." Tootill admits that he never received permission to modify the time sheets of the security guards he supervised and states that they were not aware that he was changing their hours. He claims, however, that he was not overcompensating anyone, but only attempting to compensate his employees for deficiencies in their paychecks. Tootill said he acted in this manner because his supervisor, David Harris, told him that he needed to run his department "as if it was his own business" and that Dennis Becker (a payroll employee) had shown him how to manipulate the time cards. Hankard concluded that Tootill's actions were improper, but did not appear malicious.

An internal audit performed by Hartford Financial concluded that Securitas had overcharged Hartford Financial by $59,004.90 as a result of unmanned posts. Securitas refunded that money to Hartford Financial. Tootill disputes that any post was ever left unmanned or that Hartford Financial was ever billed for hours not worked.

Tootill was thereafter suspended and eventually terminated. Following his termination, Tootill initiated an administrative action with the Connecticut Commission on Human Rights & Opportunities ("CHRO"); and following a dismissal of that action, he initiated this suit, claiming

he was dismissed because of his age.

In support of his ADEA claim, Tootill states that Hartford Financial employee Richard Sealander instructed Tootill's supervisor, David Harris, to fire another employee, John Shea. Sealander apparently stated to Harris that "Mr. Shea is too old to work as a security guard for The Hartford as he did not fit the Hartford's image," that the Hartford wanted "a young guard force," and that Sealander did not "like the fact that [Shea] was shuffling his feet and shaking his coffee cup." None of these statements were made in Tootill's presence. According to Tootill, Harris asked Tootill to have Shea report to the East Hartford office, apparently to be terminated. Although Shea was transferred from Hartford Financial, Shea is currently still employed by Securitas at another facility.

Tootill also states that Shea's age was brought up again when Human Resources Manager Gary Donovan "joked" that if Tootill was "too old like John [Shea] and [had] a shaky coffee cup in hand you don't fit the Hartford's image." He admits that he never heard anyone from Securitas say anything serious about his age; however he claims that he was told numerous times by Harris that "the gun is cocked," although he did not know whether that statement pertained to his age or to job security in general.[5] Finally, Tootill states that when he went to retrieve his belongings from his office, Eric Ziegler (a "young kid" of approximately 35 years of age) had taken his place. Tootill did not know whether Ziegler was a temporary or permanent replacement.

---

[5] Tootill's deposition also mentions complaints about the age of an individual named "Harry," but does not state what the complaints were, who made them, or how often they were made.

## II.    Discussion

### A.    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, a party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

### B.    Age Discrimination

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." 29 U.S.C.
§ 623(a)(1). "Claims under the ADEA are governed by the three-step burden-shifting framework
set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)." D'Cunha v.
Genovese/Eckerd Corp., 479 F.3d 193, 194–95 (2d Cir. 2007). First, the plaintiff must establish
a prima facie case of discrimination. Id. at 195. To establish a prima facie case, a plaintiff must
show "1) that he belonged to a protected class; 2) that he was qualified for the position he held;
3) that he suffered an adverse employment action; and 4) that the adverse employment action
occurred under circumstances giving rise to an inference of discriminatory intent." See Feingold
v. New York, 366 F.3d 138, 152 (2d Cir. 2004). The Second Circuit has characterized the
evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis."
See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005).

If the plaintiff establishes a prima facie case of age discrimination, then there is a
presumption of unlawful discrimination and the burden shifts to the defendant to articulate a
legitimate, non-discriminatory reason for the adverse employment action. Id. "[I]f the defendant
meets this burden of production, the presumption drops away, and the plaintiff must prove by a
preponderance of the evidence that the defendant's explanations were pretextual" and that the
defendant discriminated against him based on his age. See D'Cunha, 479 F.3d at 195 (internal
citations omitted). Age must be the "but-for" cause of the employer's adverse action to support a
claim under the ADEA. See Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2350–51 (2009).

"Direct evidence of discrimination is not necessary, because proof is seldom available
with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often
must rely on the cumulative weight of circumstantial evidence, since an employer who

discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file.  Ordinarily, plaintiff's evidence establishing a prima facie case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial.  Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) (internal citations omitted).

i.      *Prima Facie Case*

For the purposes of this argument, Securitas concedes that the first three elements of a prima facie case have been met.  Securitas argues, however, that Tootill cannot establish that he was terminated under circumstances giving rise to an inference of discriminatory intent.

In support of his prima facie case, Tootill claims that he was replaced in his position by a "young kid," Eric Ziegler, who was approximately 35 years old.  An employer's decision to replace an older employee with a significantly younger employee is an indicator of age discrimination.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996); Woodman, 411 F.3d at 78–79; Carlton, 202 F.3d at 135 (transfer of duties to co-workers 18 and 25 years younger than plaintiff, coupled with a statement suggesting that plaintiff should "retire," sufficiently demonstrates a prima facie case).  Although Securitas admits that Ziegler replaced Tootill on a basis that was "intended to be temporary," Securitas argues that because Tootill has not established whether Ziegler was a permanent replacement or just a "stopgap" employee, this evidence is insufficient to demonstrate a prima facie case.  However, viewing the facts in the light most favorable to the plaintiff, the burden is on *Securitas* to establish that Ziegler was a

temporary employee, which it has not done.  See Peloquin v. Securitas Sec. Servs., USA, Inc.,
No. 3:08-cv-869 (CFD), slip op. 2010 WL 2825720, at *2 (D.Conn. July 15, 2010)

Moreover, even if Ziegler was a temporary employee, the age of temporary replacement
employees may be still relevant to demonstrating a prima facie case.  See Hodges v. Rensselaer
Hartford Graduate Ctr., Inc., No. 3:06-CV-850 (PCD), 2008 WL 793594, at *6 (D.Conn. Mar.
20, 2008) (inference of age discrimination sufficient to show a prima facie case when younger
professors took on plaintiff's duties, although no one had yet become a permanent replacement);
see also Peloquin, 2010 WL 2825720 (considering the ages of allegedly "temporary" employees
in determining whether plaintiff has established a prima facies case).  There is currently no
evidence of who (if anyone) held Tootill's position after Ziegler.  Therefore, taking the facts in
the light most favorable to the plaintiff, Ziegler's age is relevant to Tootill's prima facie case.

Additionally, the remarks about John Shea's age are relevant to demonstrating a prima
facie case of discrimination.  Securitas argues that this "stray remark" cannot be considered
because the statement was made by a Hartford Financial employee and Hartford Financial was
not the ultimate decision-maker.  The Second Circuit has noted that "the impermissible bias of a
single individual . . . may taint the ultimate employment decision . . . even absent evidence of
illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to
have the impermissible bias played a meaningful role" in the decisionmaking process.  See
Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999).  Securitas admits that requests
from Hartford Financial to remove individuals from an account would be entertained and,
viewing the facts in the light most favorable to the plaintiff, it appears that such a request was
honored with respect to Shea.  Therefore, the Court cannot say as a matter of law that Sealander's

statements did not play a "meaningful role" in the decision to transfer Shea.

Although the Court recognizes that Securitas did not actually terminate Shea's employment, his removal from the Hartford Financial post and Sealander's prior statement about Shea's age, coupled with the replacement of Tootill by a younger employee (albeit perhaps on a temporary basis), is sufficient to satisfy Tootill's "minimal" burden of demonstrating a prima facie case of age discrimination.

ii.    *Legitimate Non-Discriminatory Reason*

Securitas has also clearly established a legitimate, non-discriminatory reason for firing Tootill. Specifically, Securitas has demonstrated—and Tootill has admitted—that Tootill was falsifying time sheets. Indeed, in Tootill's opposition to summary judgment, he does not argue that Securitas has not put forward a non-discriminatory reason for termination, only that the reason is "false" and thus pretext. Therefore, Securitas has satisfied its burden of production on the non-discriminatory reason, and the burden shifts back to Tootill to demonstrate pretext.

iii.    *Pretext*

The extent of the plaintiff's burden to demonstrate pretext varies on a case-by-case basis. See Skiff v. Colchester Bd. Of Educ., 514 F. Supp. 2d 284, 298 (D.Conn. 2007). "[W]hether the evidence is sufficient to withstand summary judgment depends on the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148–49 (2000)) (internal quotations omitted).

Tootill claims that the defendant's non-discriminatory reason for firing him is simply false and therefore pretextual. A plaintiff may demonstrate pretext by showing that the

employer's explanation is "unworthy of credence." <u>Reeves</u>, 530 U.S. at 143. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." <u>Id.</u> at 147. If, however, the plaintiff only creates "a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred," then the defendant is entitled to judgment as a matter of law. <u>See id.</u> at 148.

The plaintiff in <u>Reeves</u>, like Tootill, was fired for allegedly intentionally falsifying company pay records. <u>See id.</u> at 144. There, the plaintiff made a substantial showing of pretext by demonstrating that he had properly maintained attendance records, that no one was overpaid, that the company had never calculated overpayments based on the plaintiff's errors, and that on prior occasions, errors in pay had simply been adjusted in the next paycheck. <u>See id.</u> at 145.

Unlike the plaintiff in <u>Reeves</u>, Tootill cannot demonstrate that the defendant's reason for firing him was a pretext for age discrimination. Here, Tootill admits that he manipulated the time sheets of the various officers. It is also clear that because of this manipulation there were significant payroll and keycard discrepancies. Tootill disputes that the company suffered any financial consequences as a result, and maintains that he could not have been fired for this manipulation because his supervisors taught him to manipulate the time cards in that way. However, Tootill's support for these assertions is insubstantial. In particular, the only support Tootill offers is his own statements that he was never compensated for the overtime he worked and that, to his knowledge, Hartford Financial was never billed for hours that were never covered. His belief and speculation, however, are insufficient to demonstrate pretext, particularly when considered against the fraud investigation and the internal audit which demonstrated a

$59,000 overcharge to Hartford Financial.

Moreover, even assuming that Dennis Becker, a payroll employee, instructed Tootill on how to manipulate payroll cards as Tootill claims, this evidence is also not sufficient to demonstrate pretext. Although another employee may have engaged in similar behavior, there is currently no evidence that the decisionmakers at Securitas knew about or sanctioned this behavior in the past or that Becker was a similarly situated employee who Securitas treated differently. Moreover, it does not change the undisputed fact that Tootill admittedly engaged in the manipulation of numerous time sheets, a valid basis for termination.

Finally, although Tootill may have sufficient evidence of discriminatory intent to satisfy the minimal burden of a prima facie case, this evidence does not raise a question of fact regarding pretext. Tootill admits that no one at Securitas ever made a negative statement about his age and that Shea, the employee transferred from Hartford Financial allegedly due to his age, is still employed with Securitas at another facility. Additionally, although the statements made regarding Shea may minimally demonstrate that Hartford Financial exercised a "meaningful role" over Shea's employment, absent evidence that anyone from Hartford Financial made discriminatory statements about Tootill, this singular remark about another employee has limited probative value in helping to demonstrate pretext. See also Vahos v. Gen. Motors Corp., No. 06-CV-6783 (NGG)(SMG), 2008 WL 2439643, at *6 (E.D.N.Y. June 16, 2008) ( "Absent evidence that Redfern played a more significant role in Vahos's termination . . . the court finds that his statements are only of limited probative value in helping Vahos meet his ultimate burden of showing his discharge was unlawful."). Moreover, although Tootill was, at least temporarily, replaced by a younger employee, Tootill does not know whether this employee was a temporary

or permanent replacement, and there is no evidence of the age of the individual who permanently received Tootill's job.

Therefore, looking at all of the facts in the light most favorable to the plaintiff, Tootill cannot demonstrate that a genuine issue of material fact exists over whether the defendant's reason for terminating him was a pretext for age discrimination. Thus, the defendant's motion for summary judgment is granted.

## III. Conclusion

Accordingly, the defendant's motion for summary judgment [Dkt # 22] is GRANTED and the clerk is ordered to close this case.

SO ORDERED this __16th__ day of August 2010, at Hartford, Connecticut.


/s/Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**